# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAYNE EXPLORATION CO., <br><br> Plaintiff, <br><br> v. <br><br> TRIDENT STEEL CORP.; <br> COMMERCIAL METALS CO.; <br> and A-JU BESTEEL CO., LTD., <br><br> Defendants. | Case No. CIV-15-818-D |

## COMPLAINT

Plaintiff Payne Exploration Co. ("Payne"), for its claims and causes of action against Defendants Trident Steel Corp. ("Trident"), Commercial Metals Co. ("CMC"), and A-Ju Besteel Co. Ltd. ("A-Ju"), states as follows:

## JURISDICTION AND VENUE

1.  Plaintiff Payne is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma

2.  Defendant Trident is a Missouri corporation with its principal place of business in Missouri, duly authorized to do business in Oklahoma.

3.  Defendant CMC is a Delaware corporation with its principal place of business in Texas, duly authorized to do business in Oklahoma.

4.  Defendant A-Ju is a South Korean corporation. A-Ju may be served pursuant to the terms of the Convention on the Service Abroad of Judicial and Extrajudicial

Documents in Civil or Commercial Matters ("Hague Service Convention"), 20 U.S.T. 361, T.I.A.S. No. 6638 [1969].  South Korea has adopted the Hague Service Convention.  The claims and causes of action arise out of a product manufactured by A-Ju, imported by Defendant CMC, and sold to Payne by Trident, which was foreseeably used in Oklahoma.  A-Ju systematically engaged in business transactions with Defendants Trident and CMC, corporations authorized to do business in Oklahoma, which were doing business in Oklahoma at all times relevant hereto.  There is specific jurisdiction over A-Ju, as the failure of the Casing occurred within this district and is the subject of this Complaint.  The assumption of jurisdiction by this Court does not offend traditional notions of fair play and substantial justice.  Payne anticipates a longer period for service of A-Ju because of the Hague Convention obligations, and would bring to the Court's attention that service of A-Ju is not subject to the 120-day time period pursuant to F.R.C.P. 4(m).

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that complete diversity of citizenship exists and the matter in controversy exceeds the minimum amount required for diversity jurisdiction.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) in that a substantial part of the events giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

7. This lawsuit arises out of the improper manufacture, sale and ultimate failure of oil and gas well Casing that Plaintiff installed in the Beecher #1-15H Well in Kingfisher County, Oklahoma. The "Casing" at issue was designed, manufactured, assembled, marketed, imported, sold, inspected, and transported by Defendants. On information and belief, Defendant A-Ju was directly involved in the design, manufacturing, assembly, marketing, sale, inspection and transportation of the Casing. On information and belief, Defendant CMC was involved in the importing of the Casing inspection and transportation of the Casing. Defendant, Trident was involved in the sale, marketing, inspection and transportation of the Casing to its customer, Payne.

8. Payne is an oil and gas exploration company that's owns a working interest in, and operates, the Beecher #1-15H a horizontal well located in W/2 Section 15-16N-5W, Kingfisher County, Oklahoma (the "Well").

9. Payne successfully completed drilling the Well on or about July 5, 2013, expending approximately $1.2 million for the drilling portion of the well.

10. In order to greatly enhance production from the Well, Payne planned a 27-stage fracture treatment k through the 4 1/2" Casing in the wellbore. In the fracture treatment of a horizontal well, the lateral length of the well bore is divided into roughly equivalent segments; in this case, 27 segments. Starting at the end of the well, or the "toe", each stage is separately fracked. Each segment is isolated in the borehole, the Casing is perforated through holes shot through the Casing at selected intervals, and a mixture of

water, sand and other chemicals are pumped under measured pressure into the perforations in the segment being fracked.  The frack fluids and sand break open and expand the formation's natural fractures.  The process is repeated for each frack stage segment until the entire horizontal lateral length of the well bore is perforated and fracked.

11.     On or about October 30, 2012, Payne contracted with Trident to purchase new American Petroleum Institute ("API") certified casing for the Well.   The casing was to be 4 1/2" x 11.60 #-110 LTC Casing, and was ordered for the purpose of fracking.  The defective Casing was manufactured in South Korea by A-Ju, imported into the United States by CMC, and sold to Payne by Trident.

12.     Trident was aware that Payne intended to use the casing in its oil and gas operations as the production casing, running the lateral length of the Well.

13     To insure the casing was suitable and fit for Payne's intended purposes, Payne requested the Casing meet the standards and specifications set by API.

14.     Trident represented the casing was 4 ½" HCP 110 pipe on its invoices.

15.     Trident warranted and represented to Payne that the Casing met the API specifications requested by Payne.  API ratings are a standard in the oil and gas industry. This particular P-110 Casing has a weight of 11.6 pounds per foot and should, as certified, withstand burst pressures of 10,690 psi and withstand collapse pressure of 8,650 psi.  API ratings represent and warrant these specifications to the purchaser.

16.     On or about July 5, 2013, Trident delivered the allegedly API graded Casing to the Well.

17.     On July 5, 2013, Payne completed the drilling of the Well to a total depth of 12,068 feet.

18.     On or about July 8, 2013, the Casing was set and cemented throughout the length of the lateral portion of the borehole.  The Casing was set to a total depth of 12,068 feet and cemented to 6,300 feet.

19.     Payne put the Casing to its intended used by placing it into the well bore of the Beecher 1-15H Well. The Casing was installed using standard operating procedures and tongs for running the pipe into the hole.

20.     Stage 1 of the frack commenced July 23, 2013.  From July 23 to July 26, 2013, Payne successfully fracked the first 16 of the planned 27 frack stages.

21.     On July 26, 2013, the frack operation commenced on Stage 17.  In the Stage 17 pump down, it was evident from the inability to build and maintain pressure in the wellbore that there was a leak in the Casing.  As a consequence of the Casing leak, Payne was unable to complete stages 17 through 27.

22.     The Casing is cemented deep below the surface.  As a result, Payne has been unable to extract the Casing for inspection.  However, based on the circumstances of the failed frack operation and data therefrom, as documented by inspections and reports prepared on behalf of Payne and/or one or more of the Defendants, the cause of the leak and casing failure was a burst rupture in the Casing.

23.     At no time during the frack operations, did Payne or its contractors exceed the pressure rating of the Casing.

## DAMAGES

24. As a direct result of the defective Casing, Payne was unable to complete Stages 17-27 of the Beecher 1-15H Well, encompassing approximately 40% of the intended completion zone of the Well. As a result, Payne lost the ability to produce oil and gas from approximately 40% of the lateral portion of the borehole drilled for that specific purpose. Payne has sustained damages from loss of oil and gas production attributable to the portion of the borehole it was unable to frack due to the defective Casing. Payne's damages for loss of production exceed $75,000.

25. Payne has sustained damages equivalent to the cost to drill and set casing in a replacement well for the Beecher No. 1-15H. The cost to drill and set casing in a replacement well is in excess of $1,400,000.

26. Payne has been damaged by the expense it incurred in purchasing defective Casing from Trident. Payne's cost of the Casing was $113,106.04.

## CLAIM 1: PRODUCTS LIABILITY

27. Payne incorporates Paragraphs 1-26.

28. The Defendants were at all times material hereto engaged in the business of manufacturing, importing, distributing, and/or selling casing, such as the Casing sold to Payne and used in the Beecher 1-15H Well.

29. The Defendants placed in the stream of commerce products that were defective as to design or manufacture and unsuitable for their intended use.

6

30. The Casing was defective in that it was not manufactured in accordance with API specifications and/or was not otherwise fit for its intended purpose.

31. The Casing was defective (a) at the time it left the manufacturer's (A-Ju) possession and control; (2) at the time it left the importer's (CMC) possession and control; and (3) at the time it left the seller's (Trident) possession and control.

32. The defects in the Casing proximately caused Payne's damages.

## CLAIM 2: BREACH OF EXPRESS WARRANTY

33. Payne incorporates Paragraphs 1-32.

34. Defendants expressly warranted that the Casing would conform to API specifications for the type of pipe ordered by Payne.

35. These representations became part of the basis of the bargain between Trident and Payne.

36. The Casing was not of the quality or condition as expressly warranted by Defendants, but was defective.

37. Defendants' failure to provide Casing as warranted constitutes a breach of the express warranties made by Defendants.

38. Defendants' breach of their express warranties proximately caused Payne's damages.

## CLAIM 3: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

39. Payne incorporates Paragraphs 1-38.

40. At all relevant times, Defendants were merchants with respect to the products of the kind involved in this case, i.e., the Casing.

41. Defendants impliedly warranted that the Casing was merchantable, that the Casing was free from defects in material and workmanship, and that the Casing was reasonably fit, suitable, and safe for use as Casing in oil and gas wells, which was its general intended use.

42. The Casing was not as warranted and was defective so that it was not fit for the particular purpose for which it was to be used.

43. As a result, Defendants breached their implied warranties. Defendants' breach of the implied warranties of merchantability proximately caused Payne's damages.

## COUNT 4: NEGLIGENCE

44. Payne incorporates Paragraphs 1-43.

45. By representing that the casing was of a certain quality, fitness, and safety, Defendants assumed a duty to enter into the stream of commerce casing that conformed to those representations.

46. By placing defective, unsafe casing in the stream of commerce that was not as represented and was not fit for its particular use in the Well, Defendants breached their duty.

47. The breach of duty by Defendants proximately caused Payne's damages.

## COUNT 5: BREACH OF CONTRACT
### (Trident)

48. Payne incorporates Paragraphs 1-47.

49. In the sales contract and invoice therefore, Trident represented to Payne that the Casing would meet API specifications.

50. The Casing did not meet API specifications in that it was defective.

51. Trident failed to provide casing that conformed to the terms of the parties' agreement. By failing to provide casing that was free from defects and suitable for use in fracking, Trident failed to perform its contractual obligations.

52. Trident's breach of contract proximately caused Payne's damages.

## COUNT 6: CONSTRUCTIVE FRAUD
### (Trident)

53. Payne incorporates Paragraphs 1-52.

54. As a consumer, particularly a consumer of casing critical to the performance of its business, Payne has an underlying right to be correctly informed of facts regarding the products it purchases.

55. Trident negligently or innocently misrepresented to Payne the quality and fitness of the Casing, when in fact it was at all times relevant hereto defective.

56. Payne was induced to purchase the Casing based on Trident's representations of quality and fitness of the Casing.

57. Trident's misrepresentations proximately caused Payne's damages and injuries.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Payne Exploration Co., requests that judgment be awarded in its favor, and against the Defendants, and each of them, in an amount in excess of $75,000.00 for actual damages, including loss of production, damage to property and the cost to drill a replacement well for the Beecher No. 1-15H. Payne is also entitled to recover any and all incidental and consequential damages that are the natural and probable result of Defendants' actions and inactions, litigation expenses, prejudgment and post judgment interest, attorney fees, and any other relief this Court deems equitable and just.

**JURY TRIAL DEMANDED**

Respectfully Submitted,

/s/ L. Vance Brown
L. Vance Brown, OBA No. 10743
Eric Huddleston, OBA No. 21225
Elisabeth D. Brown, OBA No. 30503
ELIAS, BOOKS, BROWN & NELSON, P.C.
211 North Robinson, Suite 1300
Oklahoma City, Oklahoma 73102
Telephone:   (405) 232-3722
Facsimile:   (405) 232-3746
Email:       vbrown@eliasbooks.com
             ehuddleston@eliasbooks.com
             ebrown@eliasbooks.com
**ATTORNEYS FOR PLAINTIFF, PAYNE EXPLORATION CO.**